**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDNA SILVAS; RODOLFO SILVAS,
*Plaintiffs-Appellants,*

v.

E*TRADE MORTGAGE CORPORATION,
*Defendant-Appellee.*

No. 06-55556

D.C. No.
CV-05-02348-TJW

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Argued and Submitted
December 5, 2007—Pasadena, California

Filed January 30, 2008

Before: Harry Pregerson, John T. Noonan, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Trott

## COUNSEL

Norman B. Blumenthal, David R. Markham, Kyle R. Nordre-haug, Blumenthal & Markham, La Jolla, California, for the plaintiffs-appellants.

Daniel Harris, The Law Offices of Daniel Harris, Chicago, Illinois, for the plaintiffs-appellants.

Douglas P. Lobel, David A. Vogel, Cooley Godward Kronish, LLP, Reston, Virginia, for the defendant-appellee.

Lori R.E. Ploeger, Cooley Godward Kronish, LLP, Palo Alto, California, for the defendant-appellee.

## OPINION

TROTT, Circuit Judge:

Based on the doctrine of preemption, the district court dismissed Plaintiffs-Appellants' class action suit against

Defendant-Appellee E*TRADE Mortgage. Appellants argue that the district court erred in applying field preemption to bar their claims. We have jurisdiction pursuant 28 U.S.C. § 1291 over this timely appeal, and we affirm.

# I

## BACKGROUND

In October 2001, Plaintiffs-Appellants Edna and Rodolfo Silvas began the process of refinancing their mortgage with Defendant-Appellee E*TRADE Mortgage Corporation ("E*TRADE"). During the process, Appellants paid E*TRADE a $400.00 fee to lock-in the interest rate. In November 2001, Appellants elected to rescind the mortgage within the three days allotted for cancellation under the Truth in Lending Act ("TILA"). E*TRADE did not refund Appellants' lock-in fee, and, according to Appellants, it was E*TRADE's corporate policy not to refund the fee.

Nearly four years later, in September 2005, Appellants filed suit in the Superior Court of Orange County, California. Their complaint alleged that E*TRADE committed unlawful, unfair, and deceptive conduct in violation of California's Unfair Competition Law ("UCL"), §§ 17200 and 17500 of the California Business and Professions Code, by misrepresenting rescission rights under TILA and by failing to provide a refund of the deposit as required by TILA. Although both UCL claims were predicated exclusively on a violation of TILA, Appellants did not assert a claim under TILA itself.

The first claim alleged that E*TRADE violated UCL § 17500, the unfair advertising section, by representing to its customers that its lock-in fee is non-refundable when, under law, it is refundable if the consumer decides to exercise his or her rescission rights under TILA. The complaint further averred that the false statement was made in E*TRADE's

website and its customer disclosures and thus constituted false advertising.

The second claim alleged that E*TRADE violated UCL § 17200, the general unfair competition section, in two ways. First Appellants alleged the lock-in policy itself violated UCL § 17200 as an unlawful business act. Second, Appellants alleged that E*TRADE's practice of misrepresenting consumers' legal rights in advertisements and other documents is unfair, deceptive, and contrary to the policy of California.

Appellants brought this class action on behalf of all California residents who, any time after October 1, 2001, paid a lock-in deposit to E*TRADE for a mortgage secured by real property within the state of California and did not get the fee back after canceling an application or the mortgage loan transaction. Appellants sought disgorgement of all lock-in fees E*TRADE collected from class members.

E*TRADE removed the action to the United States District Court for the Central District of California under 28 U.S.C. § 1441(a). Soon after, E*TRADE moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that federal law preempted the UCL claims. The district court granted the motion to dismiss.

## II

## DISCUSSION

### A. Standard of Review.

We review de novo a district court's decision to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.* A complaint must not be dismissed unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003). "Questions of statutory interpretation are reviewed de novo, as are questions of preemption." *Lopez v. Wash. Mut. Bank*, 302 F.3d 900, 903 (9th Cir. 2002) (internal citation omitted).

## B.   Type of Preemption.

We have identified three ways federal law may preempt state law:

> First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. In such cases of field preemption, the mere volume and complexity of federal regulations demonstrate an implicit congressional intent to displace all state law. Third, preemption may be implied when state law actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . .

*Bank of Am. v. City and County of S. F.*, 309 F.3d 551, 558 (9th Cir. 2002) (internal quotation marks and citations omitted).

Appellants' arguments against preemption are premised on their assertion that *conflict* preemption analysis applies to the case at bar. We agree, however, with the district court, and hold that *field* preemption applies because Appellants' state law claims provide state remedies for violations of federal law in a field preempted entirely by federal law. The general pre-

sumption against preemption is not applicable here, and the relevant regulation is clear—the field of lending regulation of federal savings associations is preempted. *See* 12 C.F.R. § 560.2. Appellants were too late to sue under TILA. Their end run will not do.

### 1. No Presumption Against Preemption.

**[1]** While there is a strong presumption against federal preemption of state law governing historic police powers, the Supreme Court has held that the presumption does not apply "when [a] State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000).

"Congress has legislated in the field of banking from the days of *M'Culloch v. Maryland*, creating an extensive federal statutory and regulatory scheme." *Bank of Am.*, 309 F.3d at 558 (citation omitted). Specific to this case, Congress enacted the Home Owners' Loan Act of 1933 ("HOLA") to charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent. *Id.* at 559. HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide "best practices." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-61 (1982). We have described HOLA and its following agency regulations as a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921. "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of Am.*, 309 F.3d at 559 (internal quotation marks omitted).

## 2. The OTS Regulation Occupies the Field.

**[2]** Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. 12 U.S.C. § 1464. As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2. That the preemption is expressed in OTS's regulation, instead of HOLA, makes no difference because, "[f]ederal regulations have no less preemptive effect than federal statutes." *de la Cuesta*, 458 U.S. at 153. The regulation reads *inter alia*:

> *OTS hereby occupies the entire field of lending regulation for federal savings associations.* OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a) (emphasis added). Section 560.2(b) goes on to provide a list of specific types of state laws that are preempted, two of which, § 560.2(b)(5) and § 560.2(b)(9), are specifically applicable to this case.

> [T]he types of state laws preempted by paragraph (a) of this section, include, without limitation, state laws purporting to impose requirements regarding:
>
> . . . .
>
> (5)   Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

. . . .

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

12 C.F.R. § 560.2(b)(5) and (9).

In addition to the mandate in § 560.2(a) and (b), OTS has outlined a proper analysis in evaluating whether a state law is preempted under the regulation.

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).[1]

---

[1]*See also* OTS Legal Opinion at 7 (Dec. 24, 1996), *available at* http://www.ots.treas.gov/docs/5/56615.pdf. (recognizing the preemption of Indiana law under § 560.2(b)(9) when it merely incorporated by reference already applicable federal requirements); OTS Legal Opinion No. P-99-3 at 14-16 (Mar. 10, 1999), *available at* http://www.ots.treas.gov/

Appellants' specific claims are analyzed directly below.

### I   *UCL § 17500: Unfair Advertising*

**[3]** As outlined by OTS, the first step is to determine if UCL § 17500, as applied, is a type of state law contemplated in the list under paragraph (b) of 12 C.F.R. § 560.2. If it is, the preemption analysis ends. Here, Appellants allege that E*TRADE violated UCL § 17500 by including false information on its website and in every media advertisement to the California public. Because this claim is entirely based on E*TRADE's *disclosures and advertising*, it falls within the specific type of law listed in § 560.2(b)(9).[2] Therefore, the preemption analysis ends. UCL § 17500 as applied in this case is preempted by federal law.

### II   *UCL § 17200: Unfair Competition*

**[4]** Again, the first step is to determine if UCL § 17200, as applied, is a type of state law contemplated in the list under paragraph (b) of 12 C.F.R. § 560.2. Appellants allege E*TRADE's practice of misrepresenting consumers' legal rights in advertisements and other documents is contrary to the policy of California and thus violates UCL § 17200. This claim, similar to the claim under § 17500, fits within § 560.2(b)(9) because the alleged misrepresentation is contained in advertising and disclosure documents.

---

docs/5/56903.pdf. (noting the application of § 560.2(b)(9) and (5) in the context of advertising and loan-related fees under California law). This construction of 12 C.F.R. § 560.2 by the OTS must be given controlling weight under *Auer v. Robbins*, 519 U.S. 452 (1997). *See also Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (explaining that an agency interpretation of its own regulation is "controlling" under *Auer*).

[2]Appellants do not contest that E*TRADE is a federal thrift subject to HOLA and the OTS regulations.

**[5]** In addition, Appellants' claim under UCL § 17200 alleges that the lock-in fee itself is unlawful. That allegation triggers a separate section of paragraph (b). Section 560.2(b)(5) specifically preempts state laws purporting to impose requirements on loan related fees. *See Jones v. E*TRADE Mortgage Co.*, 397 F.3d 810, 813 (9th Cir. 2005) (finding E*TRADE's lock-in fee is not a separate transaction, but a loan related fee). Because the UCL § 17200 claim, as applied, is a type of state law listed in paragraph (b)—in two separate sections—the preemption analysis ends there. Appellants' claim under UCL § 17200 is preempted.

## C.   Incidental Affect Analysis Under 12 C.F.R. § 560.2(c).

Section 560.2(c) provides that state laws of general applicability only incidentally affecting federal savings associations are not preempted. Appellants argue that both of their state law claims fit under § 560.2(c)(1) and (4) because they are founded on California contract, commercial, and tort law, merely enforcing the private right of action under TILA. They further contend that their claims use a predicate legal duty supplied by TILA, and therefore only have an incidental affect on lending.

We do not reach the question of whether the law fits within the confines of paragraph (c) because Appellants' claims are based on types of laws listed in paragraph (b) of § 560.2, specifically (b)(9) and (b)(5).[3]

---

[3]If we did reach the issue, we would reach the same result. When federal law preempts a field, it leaves "no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). When an entire field is preempted, a state may not add a damages remedy unavailable under the federal law. *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. IDACORP, Inc.*, 379 F.3d 641, 648-49 (9th Cir. 2004) (noting that it would be inconsistent with congressional intent to permit a state court to do, through a legal principle of general applicability, that which the federal entity in the preempted field itself may not do). An integral part of any regulatory scheme is the remedy available against those who vio-

## D.   TILA's Savings Clause does not Trump HOLA.

[6] TILA's savings clause provides that TILA does not pre-empt state law unless the state law is inconsistent with TILA. 15 U.S.C. § 1610(b). TILA, however, does not trump HOLA and OTS regulations.

[7] We have held that a "no preemption clause" or a "savings clause" in a specific act does not preclude the preemptive effect of HOLA. *Bank of Am.*, 309 F.3d at 565-66.  In that case we analyzed section 1693q of the Electronic Fund Transfer Act ("EFTA"), which has a savings clause similar to that of TILA. We held that the reference to "this subchapter" in the savings clause indicated that EFTA's anti-preemption provision did not apply to HOLA. The same can be said in this case. The savings clause here begins: "[T]his subchapter does not otherwise annul, alter, or affect . . . the laws of any State . . . ." 15 U.S.C. § 1610(b). Following the holding articulated in *Bank of America*, TILA's savings clause is limited to TILA, and does not apply to HOLA and its OTS regulations.

---

late the regulations. *See*, *e.g.*, *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959) ("The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.").

In this case, it is clear that the UCL has a much longer statute of limitations than does TILA. *Compare* Cal. Bus. & Prof. Code § 17208 (West 2007) (providing a four-year statute of limitations period) *with* 15 U.S.C. § 1640(e) (providing a one-year limitations period for TILA claims). It is also clear that Appellants seek to take advantage of the longer statute of limitations under UCL to remedy TILA violations, because without the extended limitations period their claims would be barred.

An attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law.

**E.   The Entire Class is Dismissed.**

Appellants' last argument is that there is no justification for preemption under HOLA, OTS, TILA, or any other statute or regulation for claims that began to accrue after September 26, 2004 because those claims fit within the one-year statute of limitations period provided by state law. We do not find this argument persuasive.

First, the claim was not presented to the district court, so it is not appropriately before this court. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140 (9th Cir. 2002). "[I]t is well-established that an appellate court will not consider issues that were not properly raised before the district court. . . . It follows that if a party fails to raise an objection to an issue before judgment, he or she waives the right to challenge the issue on appeal." *Id.* (quoting *Slaven v. Am. Trading Transp. Co.*, 146 F.3d 1066, 1069 (9th Cir. 1998)).

Second, even if this court were to entertain the argument, Appellants' complaint does not assert any federal causes of action. This court has allowed state causes of action based on TILA as an exercise of supplemental jurisdiction when there are valid federal claims under TILA. *Jones*, 397 F.3d at 813 ("The vitality of the [plaintiffs'] claim under the Truth In Lending Act gives vitality as well to their state claim."). However, that is not the case here. Appellants' complaint only sets forth state-law causes of action, and we held above that those causes of action are preempted by 12 C.F.R. § 560.2.

**III**

**CONCLUSION**

[8] The district court properly dismissed this class action against E\*TRADE based on federal preemption. HOLA, through OTS, preempted the entire field of lending regulation. UCL § 17500 and § 17200, as applied, are specifically listed

under § 560.2(b) as types of state laws OTS intended to pre-empt. Our analysis ends there.

**AFFIRMED.**